**Harlin Phillip SERITT, Jr.,**
**Petitioner-Appellant,**

v.

**STATE OF ALABAMA,**
**Respondent-Appellee.**

No. 82–7127.

United States Court of Appeals,
Eleventh Circuit.

May 3, 1984.

Ed Still, Birmingham, Ala., for petitioner-appellant.

Elizabeth Ann Evans, Jean Williams Brown, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

We are urged to hold the Alabama Habitual Felony Offenders Statute unconstitutional because it removes the trial court's discretion to consider mitigating circumstances regarding the individual defendant when certain classes of convictions are present. We reject the position urged and affirm.

### Facts

On May 6, 1980, David Wilson was employed at the Howard Johnson Motor Lodge in Jefferson County, Alabama. At about 1 p.m., Wilson went to a branch bank to cash checks for the motel and a check for a customer. Upon return to the motel, Wilson handed $100 in 5-dollar bills to his fellow employee, Christine Pennington (Pennington). Thereafter, Wilson placed $200 in 20-dollar bills in his pants pocket. Suddenly, a white male approached Wilson and stated, "Give me the money."

When Wilson refused, the robber threatened to "shoot him." Next, the robber placed a knife in Wilson's side and again demanded the money. The robber then slit the front of Wilson's pants with his knife, making approximately a four-inch cut, and removed the $200 from Wilson's pants pocket.

Immediately thereafter, the robber turned to Pennington and demanded money from her. She handed the robber $100. The robber ran out of the motel and entered a Buick automobile driven by a white female. Pennington, by telephone, gave the license plate number of the automobile to the police department.

Shortly after 1 p.m. on May 6, 1980, police station personnel transmitted to Mountain Brook Police Officer Kenneth Watkins, Sr. a look-out call on his police radio. The call described a 1972 Buick automobile, gave the tag number, and stated that a white male, a white female, and a black female occupied the automobile. Later, Officer Watkins saw the vehicle in Jefferson County and noticed that the automobile was being detained by a Vestavia, Alabama, police vehicle.

Officer Watkins ordered the white male out of the automobile and during a search of the person removed a knife and $300 in U.S. currency from a pocket. The person arrested and identified at trial as the robber was the appellant, Harlin Phillip Seritt, Jr.

Subsequently, Seritt was indicted for the robbery of David Wilson. The jury found Seritt guilty of first-degree robbery, and the trial court set a date for a sentencing hearing to determine whether Seritt should

be sentenced under the Alabama Habitual Offenders Statute.

During the hearing, the prosecution presented evidence that Seritt had pleaded guilty to four separate offenses for violation of the Alabama Uniform Controlled Substance Act in 1975. The prosecution also demonstrated that Seritt had pleaded guilty to selling controlled substances in 1973. Based on those felony convictions and Seritt's latest conviction of a Class A felony (armed robbery), the court sentenced Seritt to life imprisonment without parole. After exhausting his state remedies, Seritt filed a habeas corpus petition in the district court, pursuant to 28 U.S.C.A. § 2254 (West 1977). Seritt asserted the following grounds in his petition:

1. The imposition of a sentence of life without parole constitutes cruel and unusual punishment;

2. The application of the habitual offender statute in this case violates equal protection.

On March 22, 1982, the district court denied the petition. After the district court granted Seritt's request for issuance of a certificate of probable cause and motion for leave to appeal in forma pauperis, Seritt filed this appeal.

Seritt makes three contentions. First, Seritt contends that his sentence of life imprisonment without parole is disproportionate to the crimes for which he was convicted and, thus, constitutes cruel and unusual punishment under the eighth and fourteenth amendments. Second, Seritt contends that the state of Alabama has denied him due process of law by imposing upon him a mandatory life imprisonment sentence. Third, Seritt contends that the district court had before it insufficient information to determine whether Seritt's sentence was so disproportionate as to constitute cruel and unusual punishment. Ser-

itt, therefore, argues that this court should remand this case for a hearing at which he may present evidence regarding disproportionality, due process, and eighth amendment claims.

In rebuttal, the state contends that the imposition of a life sentence without parole under the Alabama Habitual Felony Offenders Statute, Ala.Code § 13A-5-9 (1982)[1], does not violate the eighth amendment prohibition against cruel and unusual punishment. Additionally, the state asserts that the statute is not violative of the fourteenth amendment guarantee of equal protection because the statute is mandatory and is not applied selectively.

Issues

The two main issues raised on appeal are: (1) whether Seritt's sentence of life imprisonment without parole is disproportionate to the crimes for which he was convicted and, thus, constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments; and (2) whether the district court had before it sufficient information to determine the proportionality of Seritt's sentence.

A. Constitutionality of Recidivist Statutes

The United States Supreme Court has consistently held that recidivist statutes do not violate the eighth amendment prohibition against cruel and unusual punishment. *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912).

In *Rummel*, the Court held that a mandatory life sentence imposed upon a defendant, under the Texas recidivist law, for having been three times convicted of property-related felonies, did not constitute cru-

---

**1.** Ala.Code § 13A-5-9 (1982) provides, in pertinent part:

§ 13A-5-9. Habitual felony offenders—Additional penalties.

. . . .

(c) In all cases when it is shown that a criminal defendant has been previously convicted

of any three felonies and after such convictions has committed another felony, he must be punished as follows:

. . . .

(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole.

el and unusual punishment under the eighth and fourteenth amendments. The Court so held notwithstanding the defendant's claim that life imprisonment was "grossly disproportionate" to the three property-related felonies that formed the predicate for his sentence. *Rummel,* 445 U.S. at 285, 100 S.Ct. at 1145.

Seritt seeks to distinguish *Rummel* from this case on the ground that Rummel's sentence, unlike his, did not preclude parole. Based on this distinction, Seritt contends that his "without parole" sentence constitutes cruel and unusual punishment. The Supreme Court foreclosed this argument when it noted in *Rummel* that "the length of the sentence actually imposed [for felony convictions] is purely a matter of legislative prerogative." *Id.* at 274, 100 S.Ct. at 1139. The Court, however, did note that proportionality would be a consideration in extreme cases, e.g., when a legislature makes overtime parking a felony punishable by life imprisonment. *Id.* at 274, n. 11, 100 S.Ct. at 1139, n. 11. We hold that this is not an "extreme case" and, therefore, is not readily distinguishable from *Rummel* on that ground.

Because the length of confinement is a matter within the discretion of the punishing jurisdiction, and because the right to parole is a privilege granted by the people of Alabama through its legislature, we look to Alabama law for guidance. In *Holley v. State,* 397 So.2d 211, 216 (Ala.App.1981), *cert. denied,* 397 So.2d 217 (Ala.1981), a defendant, like Seritt, was convicted of armed robbery and sentenced to life imprisonment without parole under the Alabama Habitual Felony Offenders Act. The defendant appealed.

On appeal, the Alabama Court of Criminal Appeals upheld the sentence, stating: "The Alabama Habitual Felony Offenders Act, Code of Alabama, 1975, is not unconstitutional because it does not provide for the consideration of any mitigating circumstances involving the appellant recidivist." *Id.* at 215. Thus, the Alabama legislature has exercised its discretion in meting out punishment to recidivists, and Alabama's courts have upheld such exercise of discretion as constitutional.

The Court's holding in *Rummel* does not support Seritt's contentions, but rather, it buttresses the state's contention that a mandatory life imprisonment sentence imposed on a defendant, under a recidivist law, after having been previously convicted of a trilogy of felonies does not necessarily constitute cruel and unusual punishment under the eighth and fourteenth amendments.

In *Terrebonne v. Blackburn,* 646 F.2d 997, 1003 (5th Cir.1981) (en banc) (Johnson, J., dissenting), the dissent, while discussing the Supreme Court's decision in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), correctly observed that:

> [W]hen the [Supreme] Court acknowledged that the imposition of punishment is subject to 'those strictures of the Eighth Amendment that can be informed by *objective factors,*' *Rummel v. Estelle, supra,* 445 U.S. at 284, 100 S.Ct. at 1144 (emphasis supplied), it indicated a willingness to use other criteria to evaluate eighth amendment challenges. What the other criteria might be the Court chose not to reveal.

*Id.* at 1006. In the Supreme Court's most recent pronouncement on recidivist statutes, the Court chose to reveal the objective criteria it deemed appropriate when evaluating eighth amendment disproportionality challenges. *Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

### B. Proportionality

Seritt contends that his sentence of life imprisonment without parole is disproportionate to the crimes for which he was convicted and, thus, constitutes cruel and unusual punishment violative of the eighth and fourteenth amendments. The Supreme Court has recognized the constitutional principle of proportionality for almost a century. *O'Neil v. Vermont,* 144 U.S. 323, 12 S.Ct. 693, 36 L.Ed. 450 (1892) (Field, J., dissenting). It has long been the law that the eighth amendment prohibits imposition

of a sentence that is grossly disproportionate to the severity of the crime. *See, e.g., Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910).

In *Weems,* the leading case supporting this view, the court convicted the defendant of falsifying a public document and sentenced him to fifteen years of "cadena temporal" (a form of imprisonment that included hard labor in chains and permanent civil disabilities). After considering the crime committed and the penalty meted out, the Supreme Court noted that "it is a precept of justice that punishment for crimes should be graduated and proportioned to offense." *Id.* at 367, 30 S.Ct. at 549. The Court held that the sentence violated the eighth amendment and thereafter endorsed the principle of proportionality as a constitutional standard. In addition, the Court ruled that the sentence before it was "cruel in its excess of imprisonment," as well as in its shackles and restrictions. *Id.* at 372–73, 30 S.Ct. at 551.

■ In recent years, the proportionality issue has appeared most frequently in opinions involving the death penalty. *See, e.g., Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U.S. 238, 458, 92 S.Ct. 2726, 2838, 33 L.Ed.2d 346 (1972) (Powell, J., dissenting). Because the death penalty differs from all other forms of criminal punishment, the Supreme Court's decisions in capital cases are of limited assistance in deciding the constitutionality of the punishment in a non-capital case. *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980); *Furman v. Georgia,* 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring).

Most recently in *Solem v. Helm,* —— U.S. ——, ——, 103 S.Ct. 3001, 3008, 77 L.Ed.2d 637, 649 (1983), the Supreme Court reaffirmed its prior holding that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. *Id.* The Court cautioned that lower courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. *Id.* at ——, 103 S.Ct. at 3008, 77 L.Ed.2d at 649. Seritt's reliance on *Solem v. Helm,* however, to support his assertion that his sentence is unconstitutionally disproportionate is misplaced.

The issue raised in *Solem v. Helm,* was the extremely narrow one of "whether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh *nonviolent felony." Id.* at ——, 103 S.Ct. at 3004, 77 L.Ed.2d at 642 (emphasis added).

*Solem* is sharply distinguishable from this case. Since Seritt's most recent conviction was for first-degree robbery, a crime of violence, and the defendant in *Solem* was convicted of uttering a "no account" check for $100, a nonviolent offense, the *Solem* case is factually different and therefore inapposite. Thus, in the face of different factual settings, Seritt's reliance on *Solem* is unavailing. Unlike the most recent crime committed by the defendant in *Solem,* Seritt's crime of armed robbery is not viewed by society as one of the less serious offenses.

Based on these factual differences, we conclude that *Solem v. Helm* does not demand that we declare Seritt's life imprisonment sentence unconstitutionally disproportionate to the crime of armed robbery.

The *Solem* Court, however, did articulate objective criteria as a guide for this court's proportionality analysis under the eighth amendment. The criteria recognized in Supreme Court cases include:

(i) the gravity of the offense and the harshness of the penalty;

(ii) the sentences imposed on other criminals in the same jurisdiction; and

(iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem*, at ——, 103 S.Ct. at 3010, 77 L.Ed.2d at 650. We will utilize this analytical framework in analyzing Seritt's claim of disproportionality.

#### 1. The Gravity of the Offense and the Harshness of the Penalty

■ In evaluating Seritt's claim that his penalty was too harsh for the offense of armed robbery, we believe it important to examine the operation of the Alabama Habitual Offenders Act, Ala.Code § 13A–5–9 (1982).[2]

In order to receive a mandatory life imprisonment sentence under the statute, Seritt had to satisfy two requirements. First, he must have had previous convictions for three felonies, and second, a conviction of a Class A felony (armed robbery). The evidence reveals that Seritt satisfied each of the two prerequisites for a mandatory life imprisonment sentence. *See* Ala.Code § 13A–5–9(c)(3).

One in Seritt's position has been clearly informed of the consequences of lawlessness, has suffered three felony convictions, and has been given an opportunity to reform, all to no avail. Thus, section 13A–5–9 of the Alabama Code is nothing more than a legislative pronouncement which mandates that when a person has committed three felonies and commits yet another felony, he should receive the penalty of incarceration for life without parole.

Under Alabama law, felonies are categorized as Class A, Class B, or Class C with the following permissible prison sentences: Class A felony—10 to 99 years or life; Class B felony—2 to 20 years; Class C felony—1 year, 1 day to 10 years. Ala. Code § 13A–5–6 (1982).

Class A felonies are as follows: murder,[3] first-degree kidnapping,[4] first-degree rape,[5] first-degree sodomy,[6] first-degree burglary,[7] first-degree arson,[8] first-degree robbery,[9] and treason.[10] Except for treason, it is apparent that Alabama has reserved as Class A felony classification only the most serious of offenses and those involving the risk that a human life will be taken. No other crime committed by a habitual of-

---

**2.** *See supra* note 1.

**3.** Ala.Code § 13A–6–2 (1982).

**4.** Ala.Code § 13A–6–43 (1982).

**5.** Ala.Code § 13A–6–61 (1982).

**6.** Ala.Code § 13A–6–63 (1982).

**7.** Ala.Code § 13A–7–5 (1982) provides:
(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
(1) Is armed with explosives or a deadly weapon; or
(2) Causes physical injury to any person who is not a participant in the crime; or
(3) Uses or threatens the immediate use of a dangerous instrument.
(b) Burglary in the first degree is a Class A Felony.

**8.** Ala.Code § 13A–7–41 (1982).

**9.** Ala.Code § 13A–8–41 (1982) provides:
(a) A person commits the crime of robbery in the first degree if he violates section 13A–8–43 and he:

(1) is armed with a deadly weapon or dangerous instrument; or
(2) Causes serious physical injury to another.
(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.
(c) Robbery in the first degree is a Class A felony.
Ala.Code § 13A–8–43 (1982) provides:
(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance; or
(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
(b) Robbery in the third degree is a Class C felony.

**10.** Ala.Code § 13A–11–2 (1982).

fender is punished as severely. Furthermore, section 13A–5–9(c)(3) guarantees that no criminal will receive the sentence of life imprisonment without parole, as a habitual offender, unless he has been convicted of three prior felonies and then commits a life-endangering offense.

Thus, unlike the South Dakota sentence invalidated in *Solem v. Helm*, Alabama has provided that only the most serious habitual offenders can receive the life without parole sentence. We, therefore, hold that the sentence of life imprisonment without parole is not unduly harsh for Seritt, a four-time convicted felon, who subsequently committed the violent, life-threatening, Class A felony of armed robbery. Based on the facts before us, we hold that section 13A–5–9 satisfies the first objective criteria articulated by the Supreme Court in *Solem*.

### 2. The Sentences Imposed on Other Criminals in the Same Jurisdiction

The Court in *Solem* stated that in considering proportionality it may be helpful to compare sentences imposed on other criminals in the same jurisdiction. Thus, under the second objective criteria we consider the sentences that could be imposed on other ·criminals in Alabama. Section 13A–5–9(c)(3) of the Alabama Code (1979) ensures that all three-times convicted felons who thereafter commit, like Seritt, a life-endangering crime such as murder, first-degree kidnapping, first-degree rape, first-degree sodomy, first-degree burglary, armed robbery, and first-degree arson, will receive the sentence of life imprisonment without parole as a habitual offender.

Under section 13A–5–9, the penalty for a Class A felony occurring as a second or third offense is increased by one class. Felons committing a Class A felony after their first or second felony conviction(s) may receive the sentence of life imprisonment, with the possibility of parole, at the trial court's discretion.

In addition, another group of crimes exists for which a sentence of life imprisonment, with the possibility of parole, is authorized. This group of Class B felonies includes: second-degree arson,[11] second-degree burglary committed with the use of a firearm or deadly weapon,[12] first-degree escape,[13] first-degree extortion,[14] first-degree assault,[15] first-degree forgery,[16] and first-degree possession of forged instruments.[17]

To merit the sentencing judge's discretionary imposition of a life imprisonment sentence, the above-stated Class B felonies must be committed after two prior felony convictions. Additionally, Section 13A–5–9 provides that three-times convicted felons, who commit any one of the aforementioned Class B felonies must be punished for life in the penitentiary (with the possibility of parole).

Section 13A–5–9 also dictates that a three-times convicted felon who thereafter commits a Class C felony such as: first-degree bail jumping,[18] bigamy,[19] bribery of jurors,[20] third-degree burglary,[21] promoting prison contraband in the first degree,[22] fraudulent use of credit cards,[23] installing eavesdropping devices,[24] impersonating peace officers,[25] and other non-life-threatening crimes, may, at the sentencing

---

11. Section 13A–7–42, Alabama Code (1982).

12. Section 13A–7–6, Alabama Code (1982).

13. Section 13A–10–31, Alabama Code (1982).

14. Section 13A–8–14, Alabama Code (1982).

15. Section 13A–6–20, Alabama Code (1982).

16. Section 13A–9–2, Alabama Code (1982).

17. Section 13A–9–5, Alabama Code (1982).

18. Section 13A–10–39, Alabama Code (1982).

19. Section 13A–13–1, Alabama Code (1982).

20. Section 13A–10–125, Alabama Code (1982).

21. Section 13A–7–7, Alabama Code (1982).

22. Section 13A–10–36, Alabama Code (1982).

23. Section 13A–9–14, Alabama Code (1982).

24. Section 13A–11–33, Alabama Code (1982).

25. Section 13A–10–11, Alabama Code (1982).

judge's discretion, be sentenced to life imprisonment (with the possibility of parole).

Criminals committing any of the aforementioned Class B or Class C felonies ordinarily would be thought less deserving of punishment than one committing a life-threatening Class A felony. The sentence of life in the penitentiary is mandated only for a three-times convicted felon who commits one of the aforementioned Class B felonies. The more serious penalty of imprisonment for life without parole is mandated only for thrice convicted felons who, after such convictions, commit a Class A, life-threatening felony.

It, therefore, is clear that under section 13A–5–9, no defendant will be sentenced to life imprisonment without parole as a habitual offender unless he has been convicted of three prior felonies and then commits a life-endangering offense classified as a Class A felony. A habitual bad check writer will receive a more lenient sentence than a habitual robber or murderer under the Alabama Habitual Felony Offenders Act.

After evaluating the sentences imposed on other defendants in the same jurisdiction, we are convinced that Seritt has been treated in the same manner as defendants who have committed equally life-endangering felonies. We also conclude that the relevant statute equally metes out punishment inasmuch as criminals convicted of less serious offenses, i.e., non-life threatening crimes, are given more lenient sentences. Thus, we hold that section 13A–5–9 of the Alabama Code clearly meets the second objective criteria as articulated by the *Solem* Court.

3. The Sentence Imposed for Commission of the Same Crime in Other Jurisdictions

Finally, we compare the sentences imposed for commission of the same crime in other jurisdictions. A brief look at the law in the southern states of Georgia, Missis-

sippi, Florida, and Tennessee is appropriate.

Georgia law provides, in pertinent part, as follows: "A person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than 5 nor more than 20 years." Ga.Code Ann. § 16–8–41 (1982).[26] Georgia has no habitual offenders statute.

Similarly, Mississippi has no habitual offender statute. Robbery in Mississippi, however, can be punished by any sentence from three years to death. Miss.Code Ann. § 97–3 (1972). Thus, it is clear that in the states of Georgia and Mississippi (which do not have habitual offender statutes), Seritt could have received the penultimate sentence of life imprisonment for his armed robbery conviction.

Florida law provides, in pertinent part, as follows:

If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in section 775.082, section 775.083, or section 775.084.

Fla.Stat.Ann. § 812.13 (West 1976). Hence, in Florida, Georgia, and Mississippi, Seritt could have received a sentence of life imprisonment for his conviction of armed robbery.

Florida, however, unlike Georgia and Mississippi, has a habitual felony offenders statute. Section 775.084, Florida Statutes (West 1976) authorizes the imposition of an extended term of imprisonment on a habitual felony offender if the offender has one prior felony conviction plus two convictions for misdemeanors in the first degree or similar offenses in other states or federal courts. The Florida statute also provides that the date of the present felony must not have occurred more than five years

---

**26.** *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), held that imposition of the death penalty where the victim is not killed is in violation of U.S. Const., Amend. 8. The

Supreme Court of Georgia, in *Collins v. State,* 239 Ga. 400, 236 S.E.2d 759 (1977), held that the rationale of *Coker* must also be applied to armed robbery.

after the date of the conviction of the last prior felony, misdemeanor, or other qualified offense of which the defendant was convicted, or it must have occurred within five years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later.

The record reveals that the armed robbery in this case occurred on May 6, 1980, and Seritt's latest prior felony conviction was on March 5, 1975. We, therefore, conclude that Seritt's earlier convictions were more than five years prior to his most recent conviction.

A Florida court's inquiry under the Habitual Felony Offenders Act would not stop here. Under Florida law, if the felony for which Seritt is to be sentenced were committed within five years of Seritt's release from a prison sentence, parole, or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, the sentencing court would be authorized to impose an extended term of imprisonment.

The record, however, is barren with regard to Seritt's prior imprisonment, release, parole, or other commitment imposed as a result of Seritt's previous felony convictions. Thus, it is not clear whether Seritt would have received a less severe penalty for his conviction of armed robbery on a fifth felony offense in Florida.

In Tennessee, for robbery with a deadly weapon, the defendant may receive ten or more years in prison, life imprisonment, or the death penalty.[27] Tenn.Code Ann. § 39–2–501 (1982). Tennessee, however, has a habitual felony offenders' law. Tenn.Code Ann. § 39–1–801 (1982). Under the Tennessee statute, like the Florida statute, we are not convinced that Seritt would not have received an enhanced sentence of life imprisonment without parole.

The Tennessee law requires that at least two of the three prior felonies committed by the defendant be specific types of crimes. The list includes the sale of a schedule I controlled substance, mayhem, assault with intent to murder, malicious shooting or stabbing, abducting a female from her parents, and capital offenses. The record shows that Seritt has been convicted of four felonies; each felony conviction involved the sale of controlled substances in violation of the Uniform Alabama Controlled Substance Act.

The record, however, does not reveal the type of controlled substance Seritt sold. Thus, we are unable to determine whether the type of controlled substance Seritt sold was a "schedule I controlled substance" within the meaning of the Tennessee Habitual Offenders Law.

Notwithstanding this impediment, we are convinced that Seritt would have received an equally severe penalty for his felony conviction of armed robbery as a fifth felony offense under the Tennessee Habitual Offenders Law. In sum, Seritt has not proved, and we, therefore, are not convinced, that he was treated more severely in Alabama than he would have been in any other state.

The constitution requires that we examine Seritt's sentence to determine if it is proportionate to his crime. After applying objective criteria, we find that Seritt, a habitual felony offender, has received a sentence of life imprisonment without parole for serious life-threatening criminal conduct. Seritt has not been treated more harshly than other defendants in Alabama who have committed equally serious or more serious crimes. It is not clear that Seritt has been treated more harshly than he would have been in any other jurisdiction. Thus, we are not left with a firm conviction that Seritt's sentence is disproportionate to his crime.

Accordingly, we conclude that the Alabama Habitual Felony Offenders Act meets the objective criteria articulated, as a

---

**27.** Presumably, the death sentence is no longer imposed in such cases. *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), casts great doubt on the constitutionality of such a sentence.

guide, by the Court in *Solem v. Helm.* We hold that Seritt's sentence is proportionate to his crime and is, therefore, not prohibited by the eighth amendment.

### C. Evidentiary Hearing

 Seritt contends that the district court had before it insufficient information to determine whether his sentence was so disproportionate as to constitute cruel and unusual punishment, and, therefore, his petition should be remanded to the district court for an evidentiary hearing. This argument misses the mark and is thoroughly rebutted by the record. The district court had before it the following information: (1) Seritt threatened to shoot motel employee David Wilson if he did not hand over money Wilson had placed in his pocket; (2) Seritt stuck a knife in Wilson's side and made a four-inch cut in Wilson's trousers; (3) Seritt pointed a knife at motel employee Christine Pennington and demanded money; (4) Seritt pleaded guilty to five felony offenses involving the unlawful sale of drugs; and (5) Seritt's latest conviction was for a Class A felony during which Seritt endangered the lives of two persons. The district court had more than enough information from which to determine that Seritt's sentence was proportionate to the life-endangering crime committed.

We agree with the district court's specific finding that:

> The imposition of such a penalty is reasonable in light of the offender's repeated demonstration of his inability to function within societal limitations. Since the sentence imposed herein could not be deemed ... disproportionate to the offense committed (robbery after three prior felony convictions), this court finds that the application of the statute ... does not constitute cruel and unusual punishment.

We conclude that the district court had before it sufficient information to determine whether Seritt's sentence of life imprisonment without parole constituted cruel and unusual punishment.

Based on the record before us, we are not persuaded that Seritt's sentence violates the eighth and fourteenth amendments or that the district court had before it insufficient information to make the relevant determination. Finally, we hold that under the facts in this case, the eighth amendment does not proscribe a sentence of life imprisonment without parole for a three-times convicted felon who thereafter commits a violent, life-threatening felony. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.