**Johnny HOLLEY, Jr., Petitioner-Appellant,**

v.

**Freddie V. SMITH, Commissioner, and W.E. Johnson, Warden, Respondents-Appellees.**

**No. 85–7673**

**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

June 30, 1986.

Drake, Knowles & Pierce, Ralph I. Knowles, Jr., Sogol & Chandler, Joel Sogol, Tuscaloosa, Ala., Barry E. Friedman, Washington, D.C., for petitioner-appellant.

Joseph G.L. Marston, III, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before RONEY and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Johnny Holley, Jr. was convicted of first degree robbery in Alabama and sentenced to life without parole pursuant to Alabama's Habitual Felony Offender Act. Denied habeas corpus relief from that sentence in the district court, Holley argues that he was entitled to an evidentiary hearing on the issue of proportionality under *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

The decision in this case is controlled by *Seritt v. State of Alabama*, 731 F.2d 728 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984). The magistrate's Report and Recommendation, adopted by the district court as its opinion, and set forth here as an appendix, carefully responds to all arguments counsel has repeated on this appeal.

AFFIRMED.

### APPENDIX

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

JOHNNY HOLLEY, JR., Petitioner,

-vs-

W.E. JOHNSON, Warden; and, FREDDIE V. SMITH, Commissioner, Respondents.

NO. CV 83–A–1801–W

July 23, 1985.

REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by a person in custody of the

---

State of Alabama under a judgment of a court of that state. 28 U.S.C. 2254. Petitioner, Johnny Holley, Jr., is an inmate at the Holman Correctional Facility, Holman Station, Alabama serving a sentence of life without parole. Petitioner was convicted of first degree robbery [1] on April 9, 1980 in the Circuit Court of Tuscaloosa County, Alabama. Because he had seven [2] times previously been convicted of felonies, petitioner was sentenced to life without parole pursuant to the mandatory sentencing provisions of Alabama's Habitual Felony Offender Act.[3] The conviction and sentence were affirmed by the Alabama Court of Criminal Appeals. *Holley v. State*, 397 So.2d 211 (Ala.Cr.App.), *cert. denied*, 397 So.2d 217 (Ala.1981). Thereafter, Holley filed several petitions for the writ of error coram nobis in the Tuscaloosa County Circuit Court. Those petitions were all denied.

## THE ISSUE

On this petition Holley claims that a sentence of life imprisonment without possibility of parole is disproportionate to the crime for which he was convicted and, thus, constitutes cruel and unusual punishment under the United States Supreme Court's decision in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). He does not challenge the constitutionality of Alabama's Habitual Offender Act itself, but, rather "challenges the constitutionality of that act as applied to the facts and circumstances of his case."

## EXHAUSTION OF STATE REMEDIES

Respondent claims petitioner has failed to exhaust state remedies since he has not presented the *Solem* proportionality claim in state court. On direct appeal, and in at least one petition for the writ of error coram nobis, Holley claimed that his "sentence [was] grossly out of proportion to the severity of the crime." *Solem* was decided two and one-half years after decision of the Alabama Court of Criminal Appeals on Holley's direct appeal. Respondents argue, in effect, that the petitioner must return to the state courts to present his *Solem* claim because the Alabama Court of Criminal Appeals did not have the benefit of that decision at the time it considered his eighth amendment claim on direct appeal. Authoritative decisional law in this circuit answers the claim.

A petitioner may not be required to exhaust his claim if a change in the law occurs between the exhaustion of available state remedies and the filing of a petition for federal habeas corpus. If the change provides an effective state procedure, *Texas v. Payton*, 390 F.2d 261, 270 (5th Cir.1968), or a fundamental variation in substantive federal law, the petitioner generally will be required to return to the state courts.

---

1. Section 13A-8-41, Code of Alabama, 1975, in pertinent part, reads:

   (a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:

   (1) Is armed with a deadly weapon or dangerous instrument; ...

       \*    \*    \*    \*    \*    \*

   (c) Robbery in the first degree is a Class A felony.

   Section 13A-8-43 includes the following:

   (a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:

   (2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiesence to the taking of or *escaping* with the property. (Emphasis supplied).

2. The respondents have offered to prove that, at the time of this conviction, the petitioner had been convicted of more than twenty felonies. Those convictions are claimed to have taken place over a sixteen year period beginning in March, 1964 and were for offenses ranging from theft to assault with intent to murder.

3. Section 13A-5-9 Code of Alabama 1975, provides, in pertinent part:

   Habitual felony offenders—Additional penalties.

   (c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:

   (3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole.

*Galtieri v. Wainwright,* 582 F.2d 348, 355 (5th Cir.), *reh. denied,* 587 F.2d 508 (1978).[4]

Clearly, *Solem* did not provide any effective state procedure which was not available to Holley earlier. Likewise, it was not a fundamental departure from existing federal law. Constitutional principles regarding proportionality were recognized by the United States Supreme Court in 1910. *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). In 1980 the court considered a proportionality claim in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In reality, *Solem* did nothing more than to apply long established principles to the particular facts of that case. Because Holley presented the substance of his federal habeas claim in state court, he has exhausted state remedies and cannot be compelled to return there.

## FACTS

The facts necessary to a decision in this matter were found by the Alabama Court of Criminal Appeals.[5]

Johnny Holley, Jr., was convicted by a jury in Tuscaloosa County for robbery in the first degree and later was sentenced to life without parole when the Alabama Habitual Felony Offender Act was invoked upon a showing of seven prior felony convictions.

Johnny Holley, Jr. was identified by witnesses as the man they saw on Sunday, January 13, 1980, outside the Chapel A.M.E. Zion Church in Tuscaloosa County, carrying a box of tools away from a truck belonging to Baylock Sledge. No one saw him break into the truck, and when Holley was accosted he stated that he had bought the tool box. When Sledge and others pursued the appellant, Holley set the box down, pulled a knife

and moved toward Sledge. As Sledge and the others drew near, Holley warned, "Don't come up on me or I'll cut the hell out of you." He started to "wave" the knife, but then turned and ran away. The next day the appellant was arrested after being chased into a wooded area.

After the State completed its case, the appellant made a motion to exclude the State's evidence because the State had failed to make out a prima facie case. The motion was denied and the appellant rested his case without presenting any evidence.

Subsequently, the jury returned a guilty verdict and the court adjudged the appellant guilty in accordance with the jury's verdict. Afterwards, the State requested a sentencing hearing so that evidence could be presented as to the accused's record.

A sentencing hearing was held after the appellant had been given reasonable notice. At the hearing, the appellant was represented by counsel and no objection was made to the sentencing hearing, nor was there a motion for a continuance.

During the sentencing hearing the State produced certified copies of judgment entries of seven prior felony convictions.[6] Also, the State offered testimony of a police officer who had known the appellant for ten years and testified concerning his knowledge of two grand larcenies and one burglary in which the appellant had been involved.

The appellant did not produce any witnesses during the sentencing hearing, but his attorney did take advantage of the opportunity to cross-examine one of the two State witnesses.

---

**4.** In *Bonner v. City of Pritchard* [*Prichard*], 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**5.** This court is required to accord a presumption of correctness to the finding of the Alabama

courts in the absence of one of the eight exceptions of 28 U.S.C. 2254(d). *Sumner v. Mata,* 449 U.S. 539 [101 S.Ct. 764, 66 L.Ed.2d 722] (1981).

**6.** The judgment entries evidenced five previous convictions for grand larceny and two convictions for second degree burglary.

At the completion of the sentencing hearing and arguments by the parties, the trial court found that the appellant, after having been previously convicted of seven felonies in Alabama, committed the offense of robbery in the first degree. The court therefore sentenced appellant to imprisonment for life without parole, pursuant to Section 13A–5–9(c)(3), Code of Alabama 1975.

211 [397] So.2d at 212.

## THE REQUEST FOR DISCOVERY AND EVIDENTIARY HEARING

In the opinion of the court the disposition of this case is governed by *Seritt v. State of Alabama*, 731 F.2d 728 (11th Cir.), *cert. denied* [—— U.S. ——], 105 S.Ct. 545 [83 L.Ed.2d 433] (1984). For that reason no evidentiary hearing is required and no discovery is appropriate.

The federal habeas petitioner has the burden to establish the need for an evidentiary hearing. *Williams v. Griswald*, 743 F.2d 1533 (11th Cir.1984); *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.1984) (en banc). The threshold inquiry in deciding whether a hearing should be held is whether the petitioner's allegations, if proved, would establish the right to habeas corpus relief. *Townsend v. Sain*, 372 U.S. 293, 307 [83] S.Ct. 745, 754, 9 L.Ed.2d 770, 782 (1963); *Birt v. Montgomery, supra*, at 591, quoting *Townsend*. In evaluating a request for a hearing a court must "consider the allegations of the defendant's habeas petition and supplement the petition with those facts undisputed on the record below." *Birt v. Montgomery, supra*, at 591; *see Cronnon v. Alabama*, 587 F.2d 246, 249 (5th Cir.), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979).

The rules governing discovery in ordinary civil cases are applicable to petitions for the writ of habeas corpus only to the extent authorized by the court for good cause shown. Rule 6, Rules Governing Section 2254 Cases in the United States District Courts. The petitioner seeks authority from the court to engage in discovery for the purpose of gathering evidence relevant to such questions as: What sentences are imposed in Alabama against persons convicted for the first or second time of serious offenses such as murder and rape? What sentences are actually imposed for convictions based upon conduct of similar seriousness to that of the petitioner? How many persons subject to the habitual offender law escape its provisions through plea bargaining?

Petitioner argues that he should be "allowed to prove his case based on the facts and circumstances of *his* offense and an evaluation of those facts and circumstances under the three objective criteria required by *Solem*." It is his position that both *Solem* and *Seritt* require a case-by-case analysis utilizing "objective criteria" in every instance where an eighth amendment proportionality attack is made on a criminal sentence. The court does not believe such to be the case. The *Solem* case is limited by its narrow scope and by the court's admonition that it not be construed as holding that extensive review of all prison sentences is constitutionally mandated. In *Solem v. Helm*, the court said:

> [W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, *a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.* (Emphasis added).

463 U.S. at 290 n. 16 [103 S.Ct. at 3009 n. 16]. The court further noted that " '[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.' " (Emphasis in original). 463 U.S. at 289–90 [103 S.Ct. at 3009–10].

Apparently the petitioner would have the court engage in a "comparative analysis" between the specific facts of his crime and those of Seritt and other persons who have been sentenced under Alabama's Habitual Felony Offender Act. For example, in a memorandum brief filed November 20, 1984, petitioner seeks to depreciate the seriousness of his offense by characterizing it as a nonviolent "penny-ante theft of a tool box from the back of an unoccupied pick-up truck with [petitioner] only drawing a pocket-knife as he was 'accosted' by a group of people leaving the scene." Petitioner seems to reason that his armed robbery was not as violent, and, thus, not as serious as that of Seritt's. Accordingly, his sentence should not have been as harsh as Seritt's.

Proportionality, as a concept in reviewing criminal sentences, has been used in two different ways; traditional proportionality and comparative proportionality. The two concepts were recently distinguished by the United States Supreme Court in *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Harris was sentenced to death after conviction of a capital offense. On appeal he did not claim that death was a disproportionate sentence for his crimes but contended that the sentencing court had not compared his particular crime and sentence to those imposed on others for similar conduct. In distinguishing the two concepts, the court said,

> Traditionally, "proportionality" has been used with reference to an abstract evaluation of the appropriateness of a sentence for a particular crime. Looking to the gravity of the offense and the severity of the penalty, the sentences imposed for other crimes, and to sentencing practices in other jurisdictions, this Court has occasionally struck down punishments as inherently disproportionate, and therefore cruel and unusual, when imposed for a particular crime or category of crime.

> \* \* \* \* \* \*

> [A different] sort of proportionality review presumes that the death sentence is not disproportionate to the crime in the traditional sense. It purports to inquire instead whether the penalty is nonetheless unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime.

104 S.Ct. at 875–76.

The court first considered a case involving comparative proportionality in *Furman v. Georgia*, 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972), where the court was confronted with a claim that Georgia's death penalty was being administered in an arbitrary and capricious manner. In comparative proportionality the question is not whether a capital convict's crime was less egregious than those of other capital convicts but whether it was less egregious than the crimes of those who did not receive the death penalty. In other words, was the defendant sentenced to death for less egregious conduct than that which was committed by others who were given sentences less than death? The court seems never to have undertaken to review sentences based upon comparisons of conduct except in the context of death penalty cases. Such cases are not particularly helpful. The court has said:

> Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel.

*Rummel v. Estelle, supra* [445 U.S.], at 272 [100 S.Ct. at 1138]. Even in death cases, there is no constitutional requirement that the courts engage in any comparative proportionality analysis. *Pulley v. Harris, supra.*

Under the mandatory provisions of Alabama Code Section 13A–5–9(c)(3), a three times convicted felon who is subsequently convicted of a Class A felony is ensured a sentence of life without parole. Thus, each sentence imposed under that section is proportionate to all other sentences so im-

posed. In similar circumstances the court of appeals refused to order a hearing in *Seritt.* It noted that the district court had before it evidence of the petitioner's prior felony record and his subsequent Class A felony conviction. The court specifically approved the district court's finding in that case that:

> The imposition of such a penalty is reasonable in light of the offender's repeated demonstration of his inability to function within societal limitations. Since the sentence imposed herein could not be deemed ... disproportionate to the offense committed (robbery after three prior felony convictions), this court finds that the application of the statute ... does not constitute cruel and unusual punishment.

731 F.2d at 737.

Because the petitioner is not entitled to have the court review his sentence on the basis of his claim that his conduct was not as egregious as the conduct of other robbers, no evidentiary hearing is required and his motion to engage in discovery on that issue is due to be denied.

## THE MERITS

In *Solem v. Helms, supra,* a divided Supreme Court held that a sentence of life imprisonment without parole under South Dakota's recidivist statute was constitutionally disproportionate where the conviction was for uttering a "no account" check for $100.00. The defendant there had been previously convicted six times for conduct which involved nonviolent property crimes, all of which were alcohol related. The court reaffirmed its prior holding that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. 463 U.S. at 290 [103 S.Ct. at 3009–10]. In finding Helm's sentence unconstitutionally disproportionate to his conviction, the court articulated three "objec-

tive criteria" for guiding a proportionality analysis under the eighth amendment:

(1) the gravity of the offense and the harshness of the penalty;

(2) the sentence imposed on other criminals in the same jurisdiction; and,

(3) the sentences imposed for commission of the same crime in other jurisdictions.

463 U.S. at 292 [103 S.Ct. at 3011].

In *Seritt v. State of Alabama, supra,* the court characterized the issue in *Solem* to be "the extremely narrow one of 'whether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh *nonviolent felony.*'" 731 F.2d at 732. The court held *Solem* to be "sharply distinguishable, ... factually different and therefore inapposite" since "Seritt's most recent conviction was for first degree robbery, a crime of violence, and the defendant in *Solem* was convicted of uttering a 'no account' check for $100, a nonviolent offense." 731 F.2d at 732. The court emphasized the distinction between Seritt's violent crime and Helm's nonviolent crime and concluded on "factual differences" that, "*Solem v. Helm* does not demand that we declare Seritt's life imprisonment sentence unconstitutionally disproportionate to the crime of armed robbery." 731 F.2d at 732. The court reached this conclusion prior or to applying the three-pronged *Solem* criteria.

Although the court found, on factual differences alone, that *Solem* did not render Seritt's sentence unconstitutional, it nevertheless went on to analyze Seritt's proportionality claim under *Solem.* It concluded that Alabama's limitation of a life sentence without parole to persons who have three times been convicted of felonies and are subsequently convicted of a Class A felony,[7] meets the first prong of the *Solem* criteria. The court next examined Alabama law and found:

---

**7.** The court noted that the Alabama legislature has limited Class A felonies to murder, first-degree kidnapping, first-degree rape, first-degree sodomy, first-degree burglary, first-degree ar- son, first-degree robbery and treason. All, with the exception of treason, are clearly the most serious of crimes. 731 F.2d at 733.

[W]e are convinced that Seritt has been treated in the same manner as defendants who have committed equally life-endangering felonies. We also conclude that the relevant statute equally metes out punishment inasmuch as criminals convicted of less serious offenses, i.e., non-life threatening crimes, are given more lenient sentences. Thus, we hold that section 13A–5–9 of the Alabama Code clearly meets the second objective criteria as articulated by the *Solem* court.

731 F.2d at 735.

Finally the court compared the sentence received by Seritt with the sentence he could have received had he committed his crime in any of the surrounding states of Florida, Mississippi, Tennessee or Georgia and determined that his Alabama sentence was not disproportionate to what he could have received in those states. 731 F.2d at 736. Thus, the third prong of *Solem* was met.

The facts underlying Holley's habitual offender status are as least as egregious as those of Seritt. In that case the petitioner had five prior convictions for selling unlawful substances. He threatened two motel employees and stole money from them after cutting one's trousers. In Holley's case, the state proved seven prior convictions. He stole tools from the victim and threatened "to cut the hell" out of him and others if they interfered with him. Both Seritt and Holley were convicted of Class A felonies after previously having been convicted of three or more felonies.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing the magistrate concludes that the petition for the writ of habeas corpus should be denied. It is so recommended.

Any party may file specific written objections to this report within ten (10) days of the date it is filed. Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

The Clerk is DIRECTED to serve a copy of this report and recommendation on all parties and their counsel.

/s/ Edwin L. Nelson
EDWIN L. NELSON
UNITED STATES MAGISTRATE