LEIGH M. CLARK, Retired Circuit Judge.
This is the second appeal from the trial court to this Court in the above-styled case. The first appeal was from a judgment of conviction and sentence to imprisonment for life without parole that resulted in an affirmance of said judgment and sentence in an opinion by Honorable John DeCarlo, then Judge, and a denial of certiorari by the Alabama Supreme Court, as shown at 397 So.2d 211 (Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala.1981). The present appeal is from a dismissal without a hearing of the petition for writ of error coram nobis filed by able counsel for petitioner, after five pro se petitions for writ of error coram nobis had been dismissed by the trial court without a hearing thereon, the first petition having been filed on July 22, 1981, and according to the trial judge’s order was “denied by trial court after consideration of merits.” Thereafter, in January 1982, a pro se petition was filed and dismissed by the trial court on State’s motion on “successive petitions” grounds; then in March 1982, a third pro se petition was filed and dismissed on “successive petitions” grounds. In the same month, there was a pro se petition for writ of habeas corpus which was dismissed by the trial court “on jurisdictional and successive petitions grounds.” During 1982 and 1983, other pro se petitions for writ of error coram nobis or for habeas corpus were filed by this appellant. The present petition for writ of error coram nobis filed by appellant’s counsel is styled “PETITION FOR CORAM NOBIS, PETITION FOR HABE-AS CORPUS AND/OR PETITION FOR APPROPRIATE RELIEF,” to which a petition to dismiss was filed by counsel for the State, in part as follows:
“4. There is now pending in the United States Court of Appeals for the Eleventh Circuit an action in which the Petitioner is attacking the same conviction and sentence he attacks in this action. See the attached affidavit.
“5. The Petition ought not to be permitted to pursue simultaneous collateral attacks on his conviction in both State and Federal Courts, because:
*165 “A. Such a practice could lead to irreconcilable orders by two courts.
“B. Such a practice would create conflict between the state and federal courts.
“6. As a matter of federal-state comity, this action should be dismissed. “Therefore, the premises considered, the Respondent prays that this action be dismissed either finally, on grounds, 1, 2, or 3, above, or until the completion of the federal litigation, on grounds 4 and 5 above.”
Subsequent to the occurrences stated hereinabove and on June 30, 1986, in the case of Holley [this appellant] v. Smith, 792 F.2d 1046 (11th Cir.1986), the judgment of the United States District Court for the Northern District of Alabama was affirmed in a per curiam opinion as follows:
“Johnny Holley, Jr., was convicted of a first degree robbery in Alabama and sentenced to life without parole pursuant to Alabama’s Habitual Felony Offender Act. Denied habeas corpus relief from that sentence in the District Court, Holley argues that he was entitled to an evidentiary hearing on the issue of proportionality under Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
“The decision in this case is controlled by Seritt v. State of Alabama, 731 F.2d 728 (11th Cir.1984), cert. denied, [469] U.S. [1062], 105 S.Ct. 545, 83 L.Ed.2d 433 (1984). The magistrate’s Report and Recommendation, adopted by the District Court as its opinion, and set forth herein as an appendix, carefully responds to all arguments counsel has repeated on this appeal.
“AFFIRMED.”
The only other issue raised by counsel for appellant that requires our consideration, is thus stated in brief of counsel for appellant:
“JOHNNY HOLLEY, JR. is currently incarcerated for life without parole, in violation of due process and equal protection because the subsequent interpretative decision of this Court shows that he was convicted for robbery in the first degree without any evidence of an essential element of that offense.”
In the first paragraph of the argument of counsel for appellant as to this issue is the following:
“Johnny Holley, Jr. is serving a life sentence without parole for a crime he did not commit. There was no evidence presented at the trial of a critical element of robbery in the first degree: that he used force or the threat of force to escape with the property he attempted to steal. Harris v. State, supra; [457 So.2d 465] Casher v. State, supra [469 So.2d 679].”
In the brief on appeal of counsel for appellant are the following paragraphs:
“Unlike Johnny Holley, Jr., both Wilbert Casher and Winfred Harris had not only threatened force but had actually stabbed victims in attempting to escape from the scene of their attempted thefts. Harris, supra, 451 So.2d at 408; Casher, supra, 469 So.2d at 680. Nevertheless, all three cases are similar in that the property alleged to have been stolen was no longer in the possession of the defendants when force or threats of force were used to escape.
“In fact, the record in the Holley case shows that the tool box was abandoned in a vacant lot across from the church when the victim came out and engaged Holley in a conversation about the tools. Holley left the area of the tools and was apparently trying to convince the victims that he had not stolen when he was ‘pursued’ and ‘accosted’ by not only the victim, Blalock Sledge, but also a number of his friends. It was only then that Holley pulled out his small pocket knife; warned them ‘Don’t come up on me or I’ll cut the hell out of you’; started to wave the knife and turned and ran away. (TR. 11, 13, 26, 27, 32, 43, 71, 72, Holley v. State, supra, 397 So.2d at 612.6 Like in the cases of Harris and Casher, the tool box had been abandoned at the time the threat of force was made. The record is simply devoid of any evidence [that] threat of force was made in order for Holley to escape with the property]”
*166 We now quote seriatim the indicated footnotes 6 and 7:
“6. That the threatened use of force was to defend his escape and not a part of the attempted theft is made clear by the statement of Blalock Sledge’s friend, Ambrose Hargress, that at the time the knife was pulled, Holley ‘seemed like we (the men) were going to attack him (Holley). (TR.77).
“7. The constitutional error was cemented by the charge of the distinguished trial judge which, in all practical effect, instructed the jury that it had to convict Holley of Robbery in the first degree solely because he threatened the use of force in his immediate flight after the theft or attempted theft. See Statement of Facts, p. 7, infra (TR. 88, 89).”
Although counsel for defendant-appellant present a strong and almost persuasive argument that the cases of Harris v. State, supra, and Casher v. State, supra, and other cited cases constitute precedents for the position taken by defendant-appellant, we are not convinced thereof and believe that the instant case is distinguishable from such cases and that the trial court was not in error in its judgment denying the petition for writ of error coram nobis from which the appeal herein was taken.
In Casher v. State, supra, and Harris v. State, supra, it was determined that there was no evidence or basis for any rational inference from the evidence that defendant used or threatened any force against the alleged victim “with intent to compel acquiescence to the taking of or escaping with the property” as provided in Alabama Criminal Code, § 13A-8-43(a)(2). We quote from the testimony herein of the victim whose tools had been taken by defendant from the victim's truck as follows:
“A. When I got on the outside, the glass was busted out of the truck and the tools was out on the vacant lot.
“Q. All right, sir. And what else did you see out there?
“A. The man was standing out there by the tools.
“Q. All right. Who was that man?
“A. That one sitting right there (indicating Defendant).
“Q. The Defendant in the black shirt here?
“A. Yes, sir.
“Q. All right, sir. And what happened once you saw him, what did you do? “A. I asked him what — I asked him if he didn’t break the glass out of my truck.
“Q. What’d he say?
“A. He told me ‘No’.
“Q. What happened then?
“A. I said, ‘Well, how’d the tools get out?’ He said, T didn’t get them out.’ “And then that’s when he took that knife out of his pocket and opened the knife.
“Q. All right. Did he tell you before he opened that knife — did he tell you — did he tell you how he got the tools?
“A. He told me he bought them.
“Q. All right. What’d you say to him then?
“A. I told him he didn’t buy ’em, he got ’em out of my truck.
“Q. And is that when he took the knife out?
“A. That’s when he cussed at me and got the knife out of his pocket.
“Q. All right. Were the tools behind him when he did that?
“A. Yes.
“Q. Had he come toward you a little bit?
“A. He was between me and the tools.
[[Image here]]
“Q. All right, sir. What did you do when he pulled that knife out?
“A. When he pulled the knife out, I told Ambrose, ‘Let’s get him out.’
“Q. You said, ‘Let’s get him’?
“A. Yes, sir.
“Q. What’d he do?
“A. Sir?
“Q. What’d he do when you said, ‘Let’s get him’?
“A. He turned and run — run on by the tools and went on down the road running and we got behind him and couldn’t catch him.
*167 “Q. All right.
“A. So we turned around and come on back.
“Q. Did you get your tools then?
“A. No.
“Q. Did the police collect them as evidence?
“A. Yes, sir.
“Q. All right, sir. How did he hold that knife when he got it out? Did he open it up?
“A. He opened it. Just had his hand inside it.
“Q. Who was he facing when he pulled that knife out?
“A. He was facing me.
“Q. All right. What were you watching?
“A. I was watching the knife.
“Q. And who was the owner of those tools?
“A. They were mine.
[[Image here]]
“Q. Yours?
“A. Yes, sir.
“Q. And who did you say that Defendant was facing at the time he pulled that knife out standing between you and your tools?
“A. He was facing me.”
Although the testimony does not show conclusively that the conduct of the appellant was a violation of Alabama Criminal Code, § 13A-8-43(a)(2), we are of the opinion that it constituted substantial evidence thereof in that it tended to show that appellant threatened the imminent use of force against the owner or other persons present with intent to compel acquiescence to the taking of or escaping with the property.
We conclude that the judgment of the trial court denying appellant’s petition for writ of error coram nobis, styled “Petition for Coram Nobis, Petition for Habeas Corpus and/or Petition for Appropriate Relief,” was properly denied by the trial court; the judgment of the trial court should now be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.