**Willie James WILLIAMS, Petitioner–Appellant,**

v.

**Willie E. JOHNSON, Warden, Respondent–Appellee.**

No. 86–7486.

United States Court of Appeals, Eleventh Circuit.

May 20, 1988.

---

Robert M. Alton, Jr., Montgomery, Ala., for petitioner–appellant.

Don Siegelman, Atty. Gen., Gerrilyn V. Grant, Andy S. Poole, Asst. Attys. Gen. of Alabama, Montgomery, Ala., for respondent-appellee.

Before JOHNSON and CLARK, Circuit Judges, and DUMBAULD\*, Senior District Judge.

JOHNSON, Circuit Judge:

This is an appeal from the district court's denial of Willie James Williams' petition for a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254. We affirm.

## I.

Williams was convicted of five counts of first degree forgery in the Circuit Court of Dallas County, Alabama. His offenses involved the taking of checks from mailboxes, the forging of the owner's name on the check, and the cashing of the checks in various stores. On November 16, 1982, Williams was arrested. Detective Perry Owings of the Selma, Alabama Police Department informed Williams that he had been charged with possession of a forged instrument. Owings read the defendant his *Miranda* rights. Williams then signed a waiver of his rights and gave a statement, in which he confessed. This statement was transcribed and shown to the defendant, at which time he made corrections and signed it.

On November 17, 1982, Agent Randy Melvin of the United States Secret Service met with Williams at the Selma Police Department to discuss some stolen United States Treasury checks. Selma Police Officer Steve Tidwell was present at this meeting. Melvin advised Williams of his *Miranda* rights. Williams indicated that he understood those rights but that he was willing to cooperate. The defendant then gave a statement admitting that he had taken, signed, and cashed a number of checks. Williams signed a written copy of this statement.

Prior to trial, Williams moved to suppress his two confessions as involuntary. He claimed that the statements were coerced because Detective Owings told him that, if he cooperated with the police, Owings would speak to the prosecutor and the trial judge on Williams' behalf. The defendant also testified that Officer Tidwell stated that, if Williams cooperated, he would only have to make restitution for the stolen checks.

Tidwell and Owings both denied offering Williams any hope of leniency or a deal in exchange for his cooperation. Agent Melvin stated that he informed Williams that the defendant's cooperation would be made known to the proper authorities; however, Melvin testified that he did not promise to talk to the judge or prosecutor regarding the case. After hearing the conflicting testimony, the trial court denied the motion to suppress.

The case proceeded to trial, and the defendant was convicted on four counts of first degree forgery.[1] A second trial was held on the fifth count of first degree forgery, and Williams was also convicted on that count. Because Williams had more than three prior felony convictions, consisting of three counts of second degree burglary, grand larceny, embezzlement, and interstate transportation of a stolen vehicle, the trial judge sentenced the defendant to five life sentences[2] pursuant to the Alabama Habitual Offender Act. Ala.Code § 13A–5–9. Williams' conviction and sentence were both affirmed on appeal. *Williams v. State*, 456 So.2d 852 (Ala.Crim. App.1984).

Williams subsequently filed a pro se petition for a writ of habeas corpus in the

---

\* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. A charge of possession of a forged instrument was dismissed at the sentencing hearing. *Williams v. State*, 456 So.2d 852, 853 n. 1 (Ala. Cr.App.1984).

2. Whether the trial judge intended that the five life sentences run concurrently or consecutively is unclear. The life sentence imposed after the second trial definitely runs concurrently with the other four, but the record does not indicate whether the first four life sentences are to run concurrently. At oral argument in this Court, the parties agreed that Williams' prison record indicates that the sentences are consecutive. The state contends that Alabama law provides that sentences are consecutive unless the trial judge specifies otherwise. In light of Williams' parole eligibility, discussed *infra*, we do not address the issue of what type of sentences the defendant received.

United States District Court for the Southern District of Alabama. The case was referred to a United States Magistrate. After a hearing, the magistrate recommended that the petition be denied. This recommendation was adopted by the district court. Williams then appealed. In this Court, the parties filed a stipulation that Williams will be eligible for parole consideration on all five convictions in November 1989.

## II.

### A.

■ Williams first contends that the trial court should have suppressed his confessions because the prosecution did not demonstrate that the statements were voluntary. To qualify as voluntary, a confession must be the product of the defendant's "free and rational" choice. *Paxton v. Jarvis,* 735 F.2d 1306, 1308 (11th Cir.), *cert. denied,* 469 U.S. 935, 105 S.Ct. 335, 83 L.Ed.2d 271 (1984). In order to use statements made by a defendant during a custodial interrogation, the state must show that the defendant voluntarily waived his Fifth Amendment right against self-incrimination. *Garner v. United States,* 424 U.S. 648, 657, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976) (citing *Miranda v. Arizona,* 384 U.S. 436, 467–69, 86 S.Ct. 1602, 1624–25, 16 L.Ed.2d 694 (1966)).

■ In habeas corpus cases, state court factual findings receive a presumption of correctness. 28 U.S.C.A. § 2254(d). Implicit findings regarding the credibility of witnesses are included among the findings that this Court must credit. *See Paxton,* 735 F.2d at 1309. However, this Court must make its own determination regarding the voluntariness of the confessions after an independent review of the record. *Id.* at 1308.

By admitting the confessions in this case, the trial court implicitly determined that the law enforcement officers were more credible than the defendant when they testified that Williams had not been promised any benefit in exchange for his confession. Having made this credibility determination,

the trial court was left to decide whether the defendant's confession was voluntary. The decision to hold it voluntary was correct.

■ Prior to confessing, Williams was read his *Miranda* rights and he agreed to waive them. He corrected and signed a written copy of the statement he gave to the officers. The only comment which the law enforcement officers admitted making was that Agent Melvin told Williams that, if the defendant cooperated, Melvin would inform the appropriate authorities. Melvin did not promise leniency. This type of comment does not render a subsequent confession involuntary. *United States v. Frazier,* 434 F.2d 994, 995–96 (5th Cir.1970) (per curiam); *see also United States v. Jimenez–Diaz,* 659 F.2d 562, 568 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982).

### B.

Williams next argues that the five life sentences he received pursuant to the Alabama Habitual Offender Act constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. He contends that the sentences are disproportionate to the forgery offenses of which he was convicted.

■ The Constitution prohibits disproportionate sentences as cruel and unusual punishment. *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). In reviewing a sentence for proportionality under the Eighth Amendment, this Court must be guided by objective criteria such as "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3010.

Applying its three-pronged proportionality analysis in *Solem,* the Supreme Court stated that Helm's sentence of life in prison without parole pursuant to the South Dakota Habitual Offender Act was disproportionate to the defendant's crime of "uttering a no account check." *Id.* at 303, 103 S.Ct. at 3016. In so holding, the Court

distinguished *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which upheld a sentence of life in prison under the Texas recidivist statute. The *Solem* Court noted that although Rummel, like the defendant Helm, was sentenced to life in prison for a minor property offense, Rummel was likely to become eligible for parole within 12 years of his initial confinement. *Solem*, 463 U.S. at 297, 103 S.Ct. at 3013. Conversely, Helm was sentenced to life in prison without the possibility of parole. Therefore, Helm's sentence was more severe than Rummel's. *See id.*[3]

■ The possibility of receiving parole was deemed significant in *Rummel* and *Solem*. However, the possibility of parole is not dispositive of the proportionality question. *See Marrero v. Dugger*, 823 F.2d 1468, 1472 (11th Cir.1987), *cert. denied*, — U.S. —, —, 108 S.Ct. 1235, 1247, 99 L.Ed.2d 434, 445 (1988). In *Marrero*, a divided panel of this Court reversed the district court's denial of a writ of habeas corpus because the lower court had focused on the availability of parole, but had not considered other factors in conducting its proportionality analysis. *Id.* at 1472. The panel remanded the case, directing the district court to reconsider its decision in light of the *Solem* factors. *Id.*

The *Marrero* majority reasoned that *Rummel* only rejected a proportionality challenge to the sentence at issue in that case and that it "is controlling only in a similar factual situation." *Id.* (quoting *Solem*, 463 U.S. at 303 n. 32, 103 S.Ct. at 3017 n. 32). The majority further stated that a similar factual situation does not arise merely because the defendant has a possibility of parole. *Id.*

*Rummel* involved a conviction for felony theft in which the defendant obtained $120.75 by false pretenses. Rummel was convicted in 1973. In 1964, he had been convicted of fraudulent use of a credit card to obtain $80 worth of goods, and in 1969, he had been convicted of passing a forged check for $28.36. Because of these two prior convictions, Rummel was sentenced pursuant to the Texas recidivist statute to life in prison for the 1973 false pretenses offense. Noting that Rummel had a possibility of receiving parole, the Supreme Court upheld the sentence. 445 U.S. at 280–81, 100 S.Ct. at 1142–43.

■ We find that the instant case is indistinguishable from *Rummel*. In the case at bar, the parties have stipulated that Williams will be eligible for parole consideration by the Alabama Board of Pardons and Parole in November 1989.[4] Like Rummel, Williams had several prior felony convictions for property offenses. In 1963, he was convicted of three counts of second degree burglary, one of which apparently involved an unfinished dwelling, one count of embezzlement of $7.00 from the store where he worked as a delivery boy, and one count of grand larceny. In 1974, he was convicted of interstate transportation of a stolen vehicle. Then, in 1982, he was convicted on the current forgery charges. Though these crimes are nonviolent property offenses, Williams has more convictions than Rummel did, and some of Williams' crimes were more serious. Therefore, the fact that Rummel's life sentence with a possibility of parole after 12 years was not held disproportionate dictates that Williams' life sentences with parole eligibility after seven years of incarceration are not disproportionate.

For his part, Williams argues that his 19 year old convictions should not be used to

---

3. The state argues that this Court has applied the *Solem* analysis and held that life sentences without parole were not disproportionate. *See McLester v. Smith*, 802 F.2d 1330 (11th Cir. 1986); *Seritt v. Alabama*, 731 F.2d 728 (11th Cir.), *cert. denied*, 469 U.S. 1062, 104 S.Ct. 545, 83 L.Ed.2d 433 (1984). However, *McLester* and *Seritt* involved violent robberies. Thus, these cases are inapposite in the present case involving a nonviolent recidivist offender.

4. Alabama law requires a defendant sentenced to life in prison to serve 10 years of his sentence before he will be eligible for parole. Ala.Code § 15–22–28. However, by unanimous vote, the Board of Pardons and Parole may grant a prisoner parole even though he has not served 10 years of his sentence. *Id.* In this case, the state has stipulated that Williams will be eligible for parole in November 1989, seven years from the date of his arrest. Thus, Williams is in a better position than the usual prisoner serving a life sentence.

enhance his 1982 sentence. However, the defendant offers no support for this position, and nothing in *Rummel* or *Solem*, or in the Alabama Habitual Offender Act, allows for this distinction. Therefore, this claim must fail.

■ Williams' additional contentions are likewise unavailing. The fact that he was not represented by an attorney during the 1963 convictions is irrelevant to the *Solem* proportionality analysis, as is the fact that three of Williams' convictions arose out of a single incident in 1963. The Alabama statute requires that a defendant receive a life sentence when he "has been previously convicted of any three felonies." Ala.Code § 13A–5–9(c). The statute does not require that all the felony convictions arise out of discrete incidents, nor does it require that the convictions be obtained against a defendant represented by an attorney. Moreover, we have recently reaffirmed our view that the Alabama statute is constitutional insofar as it augments sentences for a particular conviction because of past criminal convictions. *See Lawrence v. Jones*, 837 F.2d 1572, 1574 (11th Cir.1988). Accordingly, we find that, under the circumstances of this case, Williams' sentences were not disproportionate.

### C.

■ Williams' appointed appellate counsel contends in his brief that the defendant was denied due process because the trial court did not allow the defendant an opportunity to present evidence regarding the recidivist charge. Williams' pro se brief did not raise this issue, and this argument was not raised on appeal in the state court. Therefore, the magistrate correctly held that this contention had been waived. *See Ex parte Ellison*, 410 So.2d 130, 132 (Ala. 1982). This Court may not address the merits of this issue absent a showing of cause and prejudice for the procedural default. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). No such showing has been made here.

■ Even if the Court were to reach the merits, no due process violation exists. The trial judge was sympathetic to Williams' claim for leniency because of the nonviolent nature of his offenses. The trial court stated that the Habitual Offender Act made no sense as applied to Williams. Yet, the judge was constrained by the statute. Because the habitual offender statute required the trial court to impose a life sentence, the judge's sentencing decision would not have been altered by hearing evidence regarding the nonviolent nature of the defendant's prior convictions. Thus, any error involved in refusing to allow Williams to present such evidence was harmless.

### III.

In sum, we hold that Williams' custodial statements were voluntary, and that the defendant's life sentences under the Alabama Habitual Offender Act are not disproportionate. In addition, the argument that Williams was denied an opportunity to be heard is barred by procedural default. Accordingly, we AFFIRM the district court's denial of the petition for the writ of habeas corpus.