**Donald L. OWEN, Petitioner-Appellee,**

v.

**STATE OF ALABAMA, Willie E. Johnson, Warden, Respondents-Appellants.**

No. 87-7328.

United States Court of Appeals,
Eleventh Circuit.

July 13, 1988.

Donald Siegelman, Atty. Gen., Rivard Melson, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellants.

Thomas M. Haas, Christopher Knight, Mobile, Ala., for petitioner-appellee.

Before HILL and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

In this case, the State of Alabama ("the State") appeals from the district court's order granting Donald Owen's petition for a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254. We affirm.

### I.

On July 31, 1981, Owen was convicted by a Mobile County jury for the capital murder of an on-duty, uniformed police officer. He was sentenced to life in prison without parole. The Alabama Court of Criminal Appeals affirmed Owen's conviction and sentence. *Owen v. State*, 418 So.2d 214 (Ala.Crim.App.1982), *cert. denied* (Ala. 1982).

On February 14, 1985, Owen filed a petition for habeas corpus, alleging *inter alia* that his confession to killing the police officer was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The district court granted the petition and issued the writ, contingent upon the State's failing to retry Owen.

The relevant facts follow. At approximately 2:14 A.M. on April 8, 1980, a Chickasaw, Alabama, police officer was killed by two shotgun blasts at the scene of a traffic stop. Officers who arrived on the scene shortly after the shooting found two spent shotgun shells and a police department "ticket book" near the victim's body. A nearly completed speeding ticket in the book was made out to Owen. The ticket included Owen's name, address, date of birth, and license plate number. The defendant's driver's license was also found at the scene. *Owen*, 418 So.2d at 217.

At approximately 3:00 A.M., the police arrived at Owen's home. After verifying that the license plate on his car matched the number written in the victim's "ticket book," they arrested Owen. While searching the house for any armed accomplices, the police discovered a .12 gauge shotgun and a box of shotgun shells which matched the type of shells found beside the victim. The weapon had been fired recently and ballistics tests later demonstrated that the shells found at the scene had been fired from the shotgun found in Owen's house. *Id.* at 217–18.

After arresting Owen, the police officers began to read the defendant his *Miranda* warnings. Owen interrupted them, saying, "I know my damn rights." *Id.* at 218. At the police station, Sgt. Jack Creekmore read Owen his rights again. Creekmore stated that, when he informed Owen of the defendant's right to have an attorney appointed, the defendant said, "I think I'll let ya'll [sic] appoint me one." *Id.* Creekmore then read the remaining *Miranda* warnings and asked the defendant if he understood his rights. Owen replied that he did, and he refused to sign the waiver of rights form. *Id.*

After this exchange, Creekmore questioned the defendant about the crime, and Owen confessed. The defendant stated that the victim had stopped him for speeding, that the officer insisted on citing Owen for a violation, and that Owen became infuriated and shot the victim. Creekmore testified that Owen said:

> It seemed like I saw him go for his gun. I kept waiting for [sic] to get hit. I shot twice and pumped the gun and clicked it. It wouldn't shoot no more. There were just two shells in the gun, that's all ... I just shot twice. If I had a thousand in there I would have shot a thousand. Maybe this will teach them a lesson. They ought to know better than to have just one man in a car on patrol. Now, maybe they will hire some more. I was in law enforcement for four years, you know.

*Id.* at 219.

Creekmore further testified that, at approximately 7:30 or 8:00 A.M., the defendant said to the district attorney "something along the lines of 'can I call my lawyer now' or something to that effect, or 'I want my lawyer now.'" At that point, the district attorney stopped questioning Owen.

At trial, Owen raised an insanity defense. He presented psychiatric testimony, and the psychiatrist related details of the shooting as told to him by Owen. Owen's ex-wife testified that Owen had telephoned her on the night of the shooting and that he told her that the police officer had left the defendant standing between the two cars for a long time, that the defendant had "clicked," that he did not remember shooting the officer but when he regained his composure he was pumping an empty gun, and that "[however] many bullets were in the gun was how many times he shot him."

Owen's motion to suppress the confession obtained by the police was denied. In his petition for habeas corpus, he argued that the failure to suppress was error because the confession was obtained in violation of *Miranda*. The federal magistrate agreed and the district court adopted the magistrate's recommendation as the opinion of the court. From this decision, the State appeals.

## II.

## A.

■ The State argues that the district court erred in granting Owen's petition for habeas corpus. It claims that the totality of the circumstances indicates that Owen was not attempting to invoke his right to counsel during the police station interrogation.

The Fifth Amendment requires that, when a person requests an attorney during a custodial interrogation, all questioning must cease until an attorney is present. *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628; *Edwards*, 451 U.S. at 484, 101 S.Ct. at 1884; *United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir.1986). In *Edwards*, the Supreme Court held that:

when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ... having

expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (footnote omitted). The Supreme Court has referred to *Edwards* as establishing a "rigid prophylactic rule." *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (per curiam) (citing *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979)).

The framework developed in *Edwards* is explained more fully in *Smith*. In *Smith*, the police read the accused his *Miranda* warnings and asked the defendant if he understood his right to have an attorney present during questioning. Smith responded, "Uh, yeah. I'd like to do that." 469 U.S. at 93, 105 S.Ct. at 491. The interrogating officer then finished reading Smith his rights and asked if Smith wanted to talk to him without a lawyer being present. Smith answered, "Yeah and no, uh, I don't know what's what, really." *Id.* Smith then agreed to talk to the officer. Smith subsequently incriminated himself and ultimately confessed. Upon still further questioning, he insisted that he wanted a lawyer. After this second request, the interrogation ceased. *Id.* at 94, 105 S.Ct. at 492. The Supreme Court held that Smith had invoked his right to counsel by his first request. More generally, the Court stated that "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* at 100, 105 S.Ct. at 495 (emphasis in original).

The facts of the present case are very similar to those in *Smith*. Owen's statement, "I think I'll let y'all appoint me one," made in response to the *Miranda* warning concerning the right to counsel is arguably sufficient to invoke the right. The settled approach to questions of waiver requires courts "to give a broad, rather than a narrow interpretation to a defendant's request

for counsel." *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). This Court must "presume that the defendant requests the lawyer's services at every critical stage of prosecution." *Id.* The fact that the interrogation continued and the defendant confessed before asking for a lawyer again is no more significant here than it was in *Smith.* In one sense, the present case is an even clearer *Miranda* violation because, unlike the interrogating officer in *Smith,* Sgt. Creekmore did not seek to clarify the defendant's initial request by asking Owen a second time if he wanted an attorney. Instead, Creekmore proceeded to interrogate the defendant immediately after reading the *Miranda* rights.

■ Even if we were to find that Owen's statement was not a clear invocation of the right to counsel, it qualifies, at a minimum, as an equivocal request for an attorney. This Court employs an equally "rigid prophylactic rule" in such situations. When a defendant makes an equivocal request for an attorney during a custodial interrogation, "the scope of that interrogation is immediately narrowed to one subject and one only. *Further questioning thereafter must be limited to clarifying that request* until it *is* clarified." *Thompson v. Wainwright,* 601 F.2d 768, 771 (5th Cir. 1979) (emphasis in original); *Nash v. Estelle,* 597 F.2d 513, 517 (5th Cir.) (en banc), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). Any statement taken by the state after the equivocal request for counsel is made, but before it is clarified as an effective waiver of counsel, violates *Miranda. Thompson,* 601 F.2d at 771–72.

After Owen said, "I think I'll let y'all appoint me one" in response to Creekmore's statement concerning the defendant's right to have counsel appointed, further interrogation should have been limited to clarifying Owen's request. Nonetheless, Creekmore proceeded to question Owen about his involvement in the murder. The State does not dispute this. Instead, it argues that because Owen had been a police officer for four years, because he said he understood his rights, and because he

later said to the district attorney "can I call my lawyer now" or "I want my lawyer now," his earlier statement was not a request for an attorney. In other words, the State argues that the totality of the circumstances indicates that Owen's initial statement was not a request to have an attorney appointed.

■ The State's argument ignores the Supreme Court's pronouncement in *Smith* that postrequest responses to further interrogation cannot be used to cast doubt on the clarity of the initial request. This position also contravenes this Court's precedents regarding equivocal custodial statements concerning the right to counsel. *See Thompson,* 601 F.2d at 721; *Nash,* 597 F.2d at 517. The totality of the circumstances test, which is used to determine whether an accused has "knowingly and voluntarily" waived his *Miranda* rights, *see North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979), has no role in the determination of whether an accused's request for counsel is clear or equivocal. *Thompson* establishes the rule: if a request is equivocal, subsequent interrogation can be directed only toward clarifying the accused's request. 601 F.2d at 771. Then Justice Rehnquist's dissent in *Smith* explains the correct procedure succinctly:

> Common sense suggests that the police should both complete reading petitioner his rights and then ask him to state clearly what he elects to do, even if he indicated a tentative desire while he was being informed of his rights. This is entirely consistent with applicable language in *Miranda* itself: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."

469 U.S. at 104, 105 S.Ct. at 497 (citation omitted).

In the case at bar, the police did not attempt to clarify Owen's request. Instead, they continued their interrogation and obtained a confession. This violated

*Miranda.* *See Thompson,* 601 F.2d at 772.[1]

## B.

■ The State contends that, even if Owen's confession should have been suppressed by the trial court, the failure to do so was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The failure to suppress statements obtained in violation of *Miranda* can be harmless error. *Cape v. Francis,* 741 F.2d 1287, 1294 (11th Cir.1984), *cert. denied,* 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed. 2d 245 (1985). This Court must examine the challenged testimony in light of all the evidence "adduced at the trial to determine if admission of the testimony actually led to a compromise of [the defendant's] fundamental right to a fair trial." *Id.*

To qualify as harmless, an error must not contribute to the defendant's conviction. *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827; *Cape,* 741 F.2d at 1294. In determining whether any particular error can be so classified, this Court must review the facts and the evidence to determine the effect of the unlawfully admitted evidence upon the other evidence adduced at trial and upon conduct of the defense. *Fahy v. Connecticut,* 375 U.S. 85, 87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). The Court must consider "whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Harryman v. Estelle,* 616 F.2d 870, 876 (5th Cir.) (en banc), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). "[T]his is an exacting standard that must be uncompromisingly applied." *Id.*

In this case, Owen was charged with the intentional killing of the police officer. He raised an insanity defense and alternatively claimed that the killing was done in self-defense. While there was considerable physical evidence linking Owen to the scene of the crime, and although he made incriminating statements to his ex-wife and his psychiatrist, the Magistrate held that Owen's intent to kill was "poignantly evident only in his confession." Magistrate's Recommendation at 25. In that confession, Owen said in part, "If I had a thousand [shells] in there I would have shot a thousand. Maybe this will teach them a lesson." *Owen,* 418 So.2d at 219. Because this statement was the only one which helped prove Owen's intent to kill, and because it also negated the defendant's self defense claim, the Magistrate concluded that the error in admitting the confession could not be harmless beyond a reasonable doubt. Magistrate's Recommendation at 25–26.

The State contends that Owen's custodial confession was merely cumulative because his psychiatrist and his ex-wife testified to his participation in the shooting. Owen responds that his counsel's decision to elicit facts concerning the shooting from the psychiatrist was made only after Owen's full confession had been admitted into evidence. Moreover, neither the psychiatrist nor Owen's ex-wife testified that Owen said he intended to kill the officer. In fact, Owen told his wife that he did not remember killing the officer, and Owen presented psychiatric and other testimony that he was insane at the time of the offense. Thus, the police confession constituted significant evidence, and it appears to have impacted "upon the conduct of the defense." *See*

---

**1.** The State relies on *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), for the proposition that not every mention of an attorney by a defendant prohibits further custodial questioning by police. *Barrett* involved a defendant who told police he would talk to them without having an attorney present, but would not give a written statement. The Supreme Court rejected the defendant's *Miranda* challenge to the admission of his confession. *Id.* 107 S.Ct. at 832. The Court stated that

Barrett "made clear to police his willingness to talk about the crime for which he was a suspect." *Id.* at 831.

The State's reliance on *Barrett* is misplaced here. Barrett did not make an explicit or equivocal statement invoking his right to counsel; he stated that he would talk to the police. Conversely, Owen arguably requested an attorney, and he did not specifically waive his right to counsel or agree to make a statement.

*Cape,* 741 F.2d at 1294 (quoting *Fahy,* 375 U.S. at 87, 84 S.Ct. at 230).

More importantly, the confession presents evidence not found in the incriminating statements made to the psychiatrist and ex-wife. Intentional killing requires that the defendant have a specific intent to kill. *See* Ala.Code § 13A–6–2. As the state appellate court noted, this is a necessary element of the offense. *See Owen,* 418 So.2d at 216. Without proving that Owen had the required *mens rea,* the State could not have obtained a conviction for this particular offense.[2] *See Johnson,* 812 F.2d at 1331 (error is not harmless because the improperly admitted statement may have been the only evidence found by the jury to be sufficient for conviction). Moreover, the confession undercuts Owen's insanity defense because it suggests that he had an intent to kill and that he understood what he had done. Although this is a close case, we cannot say that, absent the confession, the jury still would have convicted Owen of the intentional killing of the police officer. Based on the psychiatric and other testimony concerning Owen's mental disease or defect and his inability to conform his behavior to the requirements of law, the jury could have found him innocent by reason of insanity. The police confession contradicted this defense and rendered it less viable. Therefore, its admission was not harmless error.[3]

In sum, because Owen's police confession provided the only direct evidence of the defendant's intent to kill, we are not convinced beyond a reasonable doubt that the error did not contribute to the conviction. *See Chapman,* 386 U.S. at 23, 87 S.Ct. at 827. The confession provided significant support to the State's case, while it undermined the insanity defense. Therefore, we cannot find the error harmless.

### III.

The State violated *Miranda* and *Edwards* during the custodial interrogation of Owen. When Owen made his (at least) equivocal request for counsel, the police should have either stopped the interrogation or sought clarification of Owen's desires. Failure to seek clarification before continuing the interrogation violated this Circuit's precedents, and admission of the improperly obtained evidence was error. Although the harmless error issue is a closer question, we believe that, because the confession likely contributed to the conviction in a significant manner, its admission was not harmless beyond a reasonable doubt. Accordingly, we AFFIRM the district court's order granting the writ of habeas corpus.

---

**2.** The State argues that the intent to kill was evident from the facts of the crime and the cold-blooded method in which the killing was carried out. Assuming *arguendo* that the intent to kill can be inferred from the nature of a crime, we cannot say that the admission of Owen's police confession did not contribute to his conviction. Since the police confession was the only direct evidence of intent, it is likely that admission of that statement prejudiced Owen.

**3.** The State also argues that the confession was harmless on the issue of self defense because there was little evidence of self defense anyway, and Owen did not show that he had retreated before firing his weapon, as is required by Alabama law. *See Trammel v. State,* 52 Ala.App. 89, 289 So.2d 656, *cert. denied,* 292 Ala. 755, 289 So.2d 661 (1974). Because we have already found that the error in admitting the confession was not harmless beyond a reasonable doubt, we need not discuss this issue.