**Jack Stanley TOWNE,
Petitioner–Appellant,**

v.

**Leonard DUGGER, Bob Butterworth,
Respondents–Appellees.**

No. 88–3938.

United States Court of Appeals,
Eleventh Circuit.

April 30, 1990.

Stuart C. Markman, Tampa, Fla., for petitioner-appellant.

Kurt L. Barch, Asst. Atty. Gen., Dept. of Legal Affairs, Laura Rush, Tallahassee, Fla., for respondents-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and ATKINS *, Senior District Judge.

CLARK, Circuit Judge:

Petitioner Jack Towne was arrested at 1:00 a.m. on December 4, 1984 for loitering and prowling at an apartment complex near his home. The arresting officer, Officer Manning, questioned Towne at the police station about several rapes and burglaries that had recently occurred in the same area. When Towne made some incriminating statements, Officer Manning requested a detective to come to the station to talk to Towne. From approximately 2 a.m. until 5 a.m. Towne talked with Detective Kramig and Officer Manning and made the taped confessions that are the subject of this appeal.

Towne moved to suppress the taped confessions on the grounds that they were the fruit of an unlawful arrest, that they were coerced by promises of leniency and psychiatric treatment, and that they were obtained in violation of his privilege against self-incrimination. After a full evidentiary hearing, the trial court issued a one-page order denying the motion to suppress. The order announced no specific findings of fact, but found that the arrest was lawful and that the confessions were freely, knowingly, and voluntarily given. (Exh. F)

Towne subsequently entered pleas of nolo contendere to four separate charges of battery, sexual battery, armed robbery, and armed burglary, but reserved his right to appeal the denial of his motion to suppress. Towne was sentenced to twenty-two years imprisonment and is currently incarcerated. In his direct appeal, Towne argued that the trial court had erred in finding that the arrest was lawful and that

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

his confession was voluntarily given. The state appellate court affirmed the trial court, and summarized the evidence presented at the suppression hearing pertinent to the voluntariness of Towne's confession as follows:

[Towne] was given the Miranda rights, both at the car at the time of the arrest, and again at the police station. [Towne] maintains that he asked to see a lawyer, and the arresting officer told him he could have an attorney but if he elected to go that route the officer would "throw the book at him." According to [Towne], the officer then told him he recognized that [Towne] had psychological problems. [Towne] said the officer told him he was a "new school" officer, that he was interested in helping [Towne] with his problems, that he would help [Towne] obtain release on his own recognizance, and that he would help [Towne] obtain probation. In addition, [Towne] maintains the detectives and the arresting officer told him that tape recording his statements would not only assist in a court proceeding, but could be used by a psychiatrist to determine the nature of his stress. [Towne] contends he trusted the officers and relied upon their representations.

[T]he officers' version of the events surrounding the circumstances of [Towne's] incriminating statements differs from that of [Towne]. The officers note [Towne] was given his Miranda warnings not once, but several times, and he indicated he understood the rights available to him. The officers contend [Towne] did not request an attorney, and though the officers acknowledge the arresting officer promised to do everything he could to help, the discussions concerning offers of psychiatric help and promises to do everything possible to help him occurred in the context of the "entire realm of possibilities" attendant upon disposition of the case. According to the officers, these discussions occurred after [Towne] had made incriminating statements. The officers testified that no promises were given, and note that [Towne] read and signed a form waiving his right to consult an attorney.

The psychiatrist appointed by the court to evaluate [Towne's] psychological status testified that at the time [Towne] talked with the investigators, he was primarily motivated by his desire to get help. The psychiatrist testified further that [Towne] was peculiarly susceptible to suggestions that psychological counseling could be made available to him. In the psychiatrist's opinion, [Towne] would not have confessed if he had not been promised psychological help.

*Towne v. State,* 495 So.2d 895, 897 (Fla. Dist.Ct.App.1986), *review denied,* 504 So.2d 768 (Fla.1987).

The state appellate court found that there was sufficient evidence on the record to support the trial court's implicit finding that any promises of psychiatric or other help were made *after* Towne confessed. *Id.* at 899. The appellate court also found that although it was clear that Towne had asked Officer Manning if he thought Towne needed a lawyer, he had not at any time explicitly stated that he wanted to have a lawyer. Therefore, the court held, the evidence supported the trial court's implicit finding that Towne had not requested a lawyer, and the trial court correctly ruled that his confession was not obtained in violation of the Fifth Amendment. *Id.*

Towne filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court on May 24, 1988. The petition raises three grounds for relief: 1) that his conviction was obtained by use of a coerced confession, 2) that his conviction was obtained by evidence acquired pursuant to an unlawful arrest, and 3) that his conviction was obtained in violation of the privilege against self-incrimination. The district court denied relief on all three grounds, holding that 1) there was clear support in the record for the state court's finding that Towne's confession was not coerced and was freely and voluntarily given, 2) that *Stone v. Powell* [428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)] precluded federal review of Towne's Fourth Amendment claim that his confession was the fruit of an illegal arrest, and 3) that his question to Officer Manning as to whether

he should get a lawyer was not an equivocal request for an attorney, and thus the subsequent questioning of Towne was permissible under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

We are bound under 28 U.S.C. § 2254(d) to afford factual findings of state appellate courts a presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Lindsey v. Smith,* 820 F.2d 1137 (11th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989) (State appellate court's factual determination from reviewing record of second trial that defendant had adequate substitutes for transcripts from first trial entitled to presumption of correctness in federal habeas corpus proceedings.) Findings of fact implicit in a state appellate court's decision are equally entitled to a presumption of correctness under section 2254(d). *See Williams v. Johnson,* 845 F.2d 906 (11th Cir.1988); *Sumner v. Mata,* 449 U.S. at 539, 101 S.Ct. at 764, 66 L.Ed.2d at 722. Nevertheless, although the state court's findings of fact regarding when promises were made, or what the petitioner said about wanting an attorney are entitled to a presumption of correctness, this Court must make its own determination of the voluntariness of the confessions after an independent review of the record. *Williams,* 845 F.2d at 909; *Agee v. White,* 809 F.2d 1487, 1494 (11th Cir.1987) (State court determination as to whether a certain statement was made is entitled to a presumption of correctness under section 2254(d), but issue of whether statement implied a promise of immunity is subject to independent federal court determination.). Nothing in the record persuades us that the state appellate court's findings that promises were made to Towne only after he confessed and that he did not ask for an attorney explicitly, but did ask whether Officer Manning thought he should have an attorney, are not entitled to be presumed

correct. Nevertheless, we must make an independent determination of whether Towne's confessions were obtained in violation of his constitutional rights.

Towne filed a *pro se* appeal in this Court, contending that the district court had erred in all three of its rulings.[1] Finding no errors in the district court's analysis of the first two issues, we adopt and affirm the portions of the district court's order in which it concludes that there was sufficient evidence presented at the state court suppression hearing to support the state court's conclusion that Towne's taped confessions were not coerced by promises of psychiatric or other help, and that Towne's Fourth Amendment claim that the confession was inadmissible because it was obtained after an illegal arrest is precluded under *Cardwell v. Taylor,* 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983) (Extending rationale of *Stone v. Powell* to include custodial statements made after an illegal arrest). Dist.Ct. Manuscript Order, p. 6–10.

We cannot agree, however, with the district court's conclusion that Towne's Fifth Amendment rights were not violated in this case. The Fifth Amendment requires that when a person requests an attorney during a custodial interrogation, all questioning must stop until an attorney is present, unless the defendant subsequently initiates conversation with the authorities. *Edwards v. Arizona,* 451 U.S. at 477, 101 S.Ct. at 1880, 68 L.Ed.2d at 378. This is a "rigid prophylactic rule", *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984), and courts are required "to give a broad, rather than a narrow interpretation to a defendant's request for counsel." *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). These principles apply equally whether the defendant's request is explicit or equivocal. *Owen v. Alabama,* 849 F.2d 536, 539 (11th Cir.1988); *Thompson v. Wainwright,* 601 F.2d 768, 771 (5th Cir.

---

1. Additional briefs were filed by later appointed appellate counsel which contained arguments only pertaining to the district court's ruling that Towne's question to Officer Manning was not an equivocal request for an attorney. However, counsel did state in his brief that the brief adopted the petitioner's *pro se* arguments. Therefore, we consider all three issues raised by petitioner.

1979); *Nash v. Estelle*, 597 F.2d 513, 517 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). "When a defendant makes an equivocal request for an attorney during a custodial interrogation, 'the scope of that interrogation is immediately narrowed to one subject and one subject only. *Further questioning thereafter must be limited to clarifying that request* until it is clarified.' Any statement taken by the state after the equivocal request for counsel is made, but before it is clarified as an effective waiver of counsel, violates *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ]." *Owen*, 849 F.2d at 539 (quoting *Thompson*, 601 F.2d at 771.). Therefore, as the district court noted, the threshold inquiry with regard to the waiver of the right to counsel is whether the right to counsel was in fact invoked.

The district court held that Towne's question to Officer Manning regarding whether Officer Manning thought Towne should get a lawyer was not an equivocal request for an attorney. Our review of the record reveals the following about the circumstances surrounding Towne's taped confessions. Officer Manning testified at the suppression hearing as follows:

Q. [By defense attorney] The subject [of seeing a lawyer] was brought up, wasn't it, before [Towne] made [the taped confessions] to you?

A. Yes, sir

Q. Who brought it up?

A. He did.

Q. Okay. How did he bring it up?

A. He asked me if I thought he needed a lawyer.

Q. But he didn't say anything before that like, I think I am in a lot of trouble, I think I need a lawyer, I might need a lawyer, what do you think officer?

A. He basically asked me what—

Q. He just said "officer, what do you think about whether I should get a lawyer?"?

A. Something to that effect, yes, sir. (Exh. Vol. 5, p. 194) No attempt was made by Officer Manning or any other police officer to clarify or discuss in any way

Towne's inquiry regarding getting a lawyer. Instead, Officer Manning concedes that he responded to Towne by making accusatory statements regarding the assault, burglary, and sexual battery offenses to which Towne later confessed. Specifically, after Towne asked Officer Manning about a lawyer, Manning said "I believe you are the person I've been looking for for the past year." He also told Towne that he thought Towne's shoe prints matched those of the suspect and that Officer Reddick was pretty sure that Towne was the same person Officer Reddick had chased in a prior crime. Officer Manning also told Towne that there was a witness who could identify the scar on Towne's hand. (Exh. Vol. 5, p. 195–97)

After this, Detective Kramig arrived. Officer Manning told Detective Kramig that Towne had made some incriminating statements regarding several rape and burglary cases (Exh. Vol. 6, p. 74). At this point, Detective Kramig asked Officer Manning to assist him in interviewing Towne. Before the interview began, Detective Kramig reviewed the *Miranda* warnings with Towne one by one. After each one, the detective asked Towne if he understood it, and had him indicate in writing that he understood. Thereafter the officers began to question Towne, Towne confessed and agreed to make the tape-recorded statements that are the subject of this habeas corpus petition. (Exh. Vol. 6, p. 25–38)

In ruling that Towne's question to Officer Manning did not amount to an equivocal request for an attorney, the district court reasoned that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not intended to create an inflexible *per se* rule and, more specifically, was not intended to create a rule that courts must broadly construe questions suspects ask police officers to include an intention to invoke the right to counsel. Dist.Ct. Manuscript Opn., p. 15. Furthermore, the district court found that a common sense interpretation of Towne's question mandated a finding that he was not actually requesting counsel. This rationale is inconsistent

with binding precedent in this circuit. Although these precedents do not establish a bright line rule for determining what sorts of statements amount to equivocal requests for an attorney, they do establish that questions such as the one posed by Towne are equivocal requests that require clarification before investigating officers initiate any further questioning.

For example, in *Owen v. Alabama*, 849 F.2d at 536, the suspect said to the officers, "I think I'll let y'all appoint me one" while the officers were reading him the *Miranda* warnings. When they finished reading the *Miranda* card, the officers asked the suspect if he understood his rights, and he said he did. The suspect refused to sign a written waiver, but then gave an oral confession upon further questioning by the police. After the confession, the suspect said, "I want my lawyer now." The state argued that the totality of these circumstances indicated that the suspect's initial comment about having the police appoint him an attorney was not an attempt to invoke his right to have an attorney present during questioning.

The court held that the totality of the circumstances test, which is used to determine whether an accused has knowingly and voluntarily waived his *Miranda* rights, *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), has no role in the determination of whether an accused's request for counsel is clear or equivocal. *Owen*, 849 F.2d at 539. Furthermore, an accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of the initial request itself. *Id.* (citing *Smith v. Illinois*, 469 U.S. at 100, 105 S.Ct. at 495, 83 L.Ed.2d at 496–97.) The court ultimately held that the suspect's statement "I think I'll let y'all appoint me one" was an equivocal request for counsel that the officers had failed to clarify before the confession was obtained. Therefore, the confession was held to have been obtained in violation of the suspect's Fifth Amendment rights. *Id.* at 539–40.

Two former Fifth Circuit opinions, *Thompson v. Wainwright*, 601 F.2d at 768, and *Nash v. Estelle*, 597 F.2d at 513, also confront this issue.[2] In *Thompson*, the defendant was advised of his *Miranda* rights, signed a waiver, and then stated that he wanted to tell his story to the police but he wanted to tell it to an attorney first. The police told him that if he talked to an attorney he wouldn't be able to talk to them, that his attorney would tell him not to talk, and that his attorney would not be able to tell them what he said. The defendant confessed without talking to an attorney. The court held that the defendant had made an equivocal request, and that the subsequent information provided by the interrogators did not serve to clarify the request. Therefore, the confession was obtained in violation of the defendant's Fifth Amendment rights. *Id.* at 771–72.

In *Nash v. Estelle*, 597 F.2d at 513, the defendant stated that he wanted to have an attorney appointed. The officer told him that they would have to stop talking if the defendant was going to talk to an attorney. The defendant then stated that he wanted to tell his story to the officer. The officer explained that the defendant could have an attorney right away, but if he got one the officer would have to stop talking to him immediately, and that if the defendant wanted to talk to him then and consult with an attorney later he could do that also. The defendant decided to talk to the officer prior to consulting with an attorney. The court held that under these circumstances the officer had properly narrowed his questioning to clarifying the defendant's request for an attorney, and thus the subsequently obtained confession was not obtained in violation of the defendant's Fifth Amendment rights. *Id.* at 520.

Although these cases give a broad interpretation to the statements made by the defendants in finding that they made equivocal requests for an attorney, none of them involve a question posed by the defendant,

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit made prior to the close of business on September 30, 1981.

rather than an affirmative statement about exercising the right to consult with an attorney. However, the Fifth and Ninth Circuits have considered cases involving questions about attorneys posed by defendants. In both cases the court applied the rationale of *Thompson* and *Nash* and found that the questions posed amounted to equivocal requests for an attorney.

In *United States v. Cherry*, 733 F.2d 1124 (5th Cir.1984), the defendant in a military murder investigation said "Maybe I should talk to an attorney before I make a further statement." The officer responded that the defendant had a constitutional right to advice of counsel. The defendant then asked "Why should I not get an attorney?" and the officer said that the attorney would protect the defendant's rights and would probably tell him to remain silent. The defendant next asked to speak to a sergeant, but was told that the sergeant couldn't be found. At that point another officer came in and told the defendant that other soldiers had said they had seen the defendant with the murder weapon. The defendant spontaneously confessed. The court held that the defendant had made an equivocal request for an attorney and his Fifth Amendment rights had been violated because the officers did not narrow their interrogation to clarifying whether the defendant wanted a lawyer before going any further. *Id.* at 1131.

In *United States v. Fouche*, 833 F.2d 1284 (9th Cir.1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988), the defendant asked to be allowed to call an attorney. He left the room, and instead called his wife. Upon returning, the officer again advised him of his rights. The defendant told the officer that he had not called an attorney, but had called his wife and she had told him to do whatever he wanted to. He then asked the officer, "What should I do?". The officer told him he wasn't an attorney and he couldn't give him advice. The officer then asked him, "Do you want to make a statement?" and the defendant said he did. The court held that the defendant had made an equivocal request for counsel, but that his Fifth Amendment rights had not been violated.

The court reasoned that the officer's failure to specifically ask the defendant if he wanted a lawyer was not error, in that the *Nash* decision does not require a "mechanical and talismanic repetition of the word lawyer" when *Miranda* warnings have been given twice in great detail and the suspect has understood his rights. *Id.* at 1289.

The question posed by Towne is similar to those posed by the defendants in *Cherry* and *Fouche*. In *Cherry* the defendant said "Maybe I should get an attorney" and then asked, "Why should I not get an attorney?". The defendant in *Fouche* asked to be allowed to call an attorney, but returned to the room and told the officer he had called his wife instead, and then asked "What should I do?". Thus, in both cases, as in the present case, the interrogating officer was asked by the defendant for advice as to whether the defendant should exercise his right to get an attorney. Such questions reveal to the interrogating officer that the defendant is contemplating exercising his right to have an attorney present, and under the rule established in *Nash* and *Thompson*, the officer should clarify the defendant's wishes before proceeding further.

In *Owen, Thompson, Nash, Cherry, Fouche* and in the present case, a suspect made an ambiguous statement, either in the form of an assertion or a question, communicating a possible desire to exercise his right to have an attorney present during questioning. There is no doubt that in each case, including the present one, the law enforcement officer understood that the suspect was talking about consulting with an attorney. To hold, as the district court did, that a suspect must give "a more definite indication of his desire to have counsel" than that given by Towne's question would undermine the principles behind the holding in *Thompson* that equivocal requests must be clarified before interrogation may continue. This clarification rule is designed to preserve the *Miranda* protections where an accused gives ambiguous, vague, indefinite, or indecisive signals that require follow-up questioning to clari-

fy his or her wishes. If, as the district court held, equivocally invoking the right to counsel requires a defendant to make "a more definite indication" at the outset, only requests that are facially unequivocal will ever pass muster. Therefore, we hold that the question posed by Towne to Officer Manning amounted to an equivocal request for counsel that required that further questioning be limited to clarifying whether Towne wanted to consult with an attorney before continuing with the interrogation.

The state argues that even if Towne's question was an equivocal request for an attorney, Detective Kramig's subsequent careful repetition of the *Miranda* warning and Towne's signing of a waiver of rights form served to clarify the request. The state concedes that after a defendant makes an equivocal request for an attorney, merely asking if the defendant understands the *Miranda* warnings that were read to him earlier is not enough to clarify the defendant's desires to speak with an attorney. *United States v. Porter*, 764 F.2d 1 (1st Cir.1985). However, the state argues that in the present case the officers did much more than merely ask if Towne understood his rights. Instead, they repeated them one by one, pausing after each to ask if he understood, and having him indicate in writing that he did. Thus, the state argues, the officers followed the *Porter* court's mandate that they "make sure that the accused, knowing his rights, voluntarily relinquishes them." *Id.* at 7.

However, in *Cervi v. Kemp*, 855 F.2d 702 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1172, 103 L.Ed.2d 230 (1989), this Court held that the signing of a waiver statement after a request for counsel is not a valid waiver. The court found that when the defendant clearly requested an attorney, but then signed a statement waiving his *Miranda* rights before confessing, the waiver was not a valid waiver under *Edwards v. Arizona*. The court based its decision on the clear mandate of *Edwards*, in which the Supreme Court held that once the defendant has requested counsel, all questioning must stop, and confessions obtained by further police-initiated questioning are obtained in violation of the defen-

dant's Fifth Amendment rights. *Cervi*, 855 F.2d at 705–06. Therefore, because Towne made an equivocal request for an attorney that was never clarified, and did not initiate the further interrogation, the confession was obtained in violation of his Fifth Amendment rights.

The state argues that the present case is similar to *United States v. Gonzalez*, 833 F.2d 1464 (11th Cir.1987), in which the court held that informing the defendant of her rights after she made an equivocal request for an attorney was sufficient to clarify her request. In *Gonzalez*, the defendant turned herself in to law enforcement officers. When she arrived, she stated that she had been out looking for an attorney, but had found that it was too expensive to have one with her when she surrendered. The officers read her the *Miranda* warnings, and then interrogated her and she confessed. The court held that this case was "near the boundary between an implied waiver of counsel and an ambiguous request for counsel." *Id.* at 1466. The court further held that "any ambiguity in her statement about her inability to retain counsel was resolved by her failure to request counsel ... after receiving the *Miranda* warnings and proceeding with her confession." *Id.*

We find that the present case is distinct from *Gonzalez*. In *Gonzalez*, the officer's subsequent reading of the *Miranda* warnings served to clarify the misperception indicated by the defendant's statement that it was too expensive for her to have an attorney accompany her to turn herself in. Specifically, the statement "If you would like to have an attorney present during questioning and cannot afford one, one will be appointed for you" served to clear up the defendant's misunderstanding that she had to provide her own lawyer during questioning. In contrast, Officer Manning and Detective Kramig admit that they did nothing to clarify whether Towne wanted to have an attorney present. They did not, as the officer in *Nash* did, seek to explain that Towne could talk to them then without a lawyer, but could consult with one later. They also did not, like the officer in

*Fouche,* tell Towne that they could not give him legal advice and that it was up to him to decide. Instead, Officer Manning further intimidated Towne by making accusatory statements, much as the officer in *Cherry* further intimidated the defendant by telling him that other soldiers had seen him in possession of the murder weapon.

The state and Towne have stipulated that the state trial court's initial ruling on the validity of Towne's taped confessions is dispositive of this case. Therefore, because we find that the confessions were obtained in violation of the petitioner's Fifth Amendment rights, the district court's denial of the petition for habeas corpus relief is REVERSED.[3] The case is remanded with instructions for the district court to grant the writ conditioned upon the state's right to try the defendant within a reasonable time as fixed by the district court.

---

**3.** Citing Justice O'Connor's concurring opinion in *Duckworth v. Eagan,* —— U.S. ——, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), the state also argues for the first time on appeal that this Court should extend the ruling of *Stone v. Powell* to preclude federal habeas corpus review of claims of *Miranda* violations. As this argument was not presented to the district court, it is not properly before us on appeal. Furthermore, two panels of this Court have previously declined to extend *Stone v. Powell* in this manner. *DeAngelo v. Wainwright,* 781 F.2d 1516 (11th Cir.), *cert. denied,* 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986); *Jarrell v. Balkcom,* 735 F.2d 1242 (11th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).